



# MEMORANDUM OPINION

No. 04-07-00492-CR

Martin **SALINAS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. A-06-351
Honorable Emil Karl Prohl, Judge Presiding

Opinion by:  Catherine Stone, Justice

Sitting:  Alma L. López, Chief Justice
Catherine Stone, Justice
Sandee Bryan Marion, Justice

Delivered and Filed:  September 10, 2008

AFFIRMED

A jury found Martin Salinas guilty of aggravated assault with a deadly weapon.  He was sentenced to a term of 60-years imprisonment.  In his sole issue, Salinas challenges the trial court's admission of witness testimony indicating he was a member of the Mexican Mafia.  We affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 3, 2006, complainant Jesse Aguilar was at his home in Center Point, Texas when he heard a car horn outside. Aguilar went outside and found Salinas standing at his gate. A fight broke out between Aguilar and Salinas and both men proceeded to stab each other. Aguilar and Salinas were individually indicted for aggravated assault with a deadly weapon.

During the course of Salinas's trial, the defense called Paige Sutton as a witness. Sutton—who was the on-and-off again girlfriend of both Aguilar and Salinas—had been staying with Aguilar at the time of the incident. Testimony showed she came out of the house during the fight and later accompanied Salinas to the emergency room.

The defense argued Salinas went to Aguilar's home that evening to retrieve Sutton—who they claimed had been held against her will by Aguilar. The prosecution, however, argued that Sutton was afraid of Salinas. On re-direct examination, the prosecution elicited testimony from Sutton that Salinas was a member of the Mexican Mafia. The prosecution claimed Salinas's motive that evening was to stab Aguilar because he was allegedly an ex-member of the Mexican Mafia. The trial court admitted evidence of Salinas's affiliation with the Mexican Mafia over the defense's objections. Following his conviction, Salinas brought this appeal alleging that his gang affiliation was erroneously admitted and constituted harmful error because it was both irrelevant and highly prejudicial.

## STANDARD OF REVIEW

We review challenges to a trial court's evidentiary rulings under an abuse of discretion standard. *Johnson v. State*, 698 S.W.2d 154, 160 (Tex. Crim. App. 1985). We will not disturb the trial court's ruling unless such ruling falls outside the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). Further, no reversible error

exists in the exclusion or admission of evidence unless a substantial right of a party is affected. TEX. R. APP. P. 44.2(b); *Rodriguez v. State*, 974 S.W.2d 364, 370 (Tex. App.—Amarillo 1998, pet. ref'd).

## DISCUSSION

In his sole issue, Salinas contends the introduction of his purported affiliation with the Mexican Mafia was irrelevant and prejudicial, and constitutes reversible error. We disagree.

We first address Salinas's challenge to the relevancy of the Mexican Mafia evidence. Evidence is "relevant" when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Evidence of Salinas's gang affiliation was relevant because it supports the State's theory that Sutton was afraid of Salinas and that his motive that evening was to stab Aguilar for being an alleged ex-member of the Mexican Mafia.

At trial, the prosecution sought to disprove the defense's theory that Salinas intended to "rescue" Sutton. First, testimony of Salinas's affiliation with the Mexican Mafia was used to impeach Sutton. During the trial, Sutton testified that she accompanied Salinas to the emergency room where he coached her about what to tell law enforcement. Prior to the trial, she made two statements to the police: one in the presence of Salinas—which followed the version of events instructed by Salinas; and a second statement made outside the presence of Salinas which conflicted with her first statement. Evidence was also admitted showing that Salinas wrote letters to Sutton and signed them with the initials "EME," which Sutton knew to be a symbol used by members of the Mexican Mafia. Salinas's connection with the Mexican Mafia was necessary to prove why Sutton gave conflicting statements—she was afraid of Salinas and what he might do if she did not relate the story as he had instructed. Therefore, the evidence operated to discredit the defense's theory that Salinas intended to retrieve Sutton that evening, making the theory less probable than

it would have been without the evidence. *See Montgomery*, 810 S.W.2d at 376 (finding that evidence is relevant when a reasonable person finds it helpful in determining the truth or falsity of any consequential fact).

In addition to impeaching Sutton, evidence that Salinas was a member of the Mexican Mafia was also used to prove Salinas's motive that evening. Deputy, Jimmy Vasquez testified that Salinas told him he was a member of the Mexican Mafia and that Jesse Aguilar was no longer a member. According to Vasquez, Salinas implied that the Mexican Mafia had given him the power and authority to kill Aguilar. Evidence of Salinas's gang affiliation thus made it less probable that Salinas went to Aguilar's home that evening to retrieve Sutton. *See* TEX. R. EVID. 401. Because evidence that Salinas was a member of the Mexican Mafia worked to discredit the defense's theory, making it less probable than it would have been without the evidence, it was relevant. *Id.*

We next address Salinas's claim that the admission of his gang affiliation was prejudicial and constituted inadmissible character evidence. Under Texas Rule of Evidence 404(b), evidence of other crimes, wrongs, or acts is inadmissible to prove character conformity. As a general rule, evidence of gang affiliation falls within the Rule 404(b) exclusion of "other crimes, wrongs or acts" used to show character conformity. *See Pondexter v. State*, 942 S.W.2d 577, 583–84 (Tex. Crim. App. 1996) (holding that evidence of gang affiliation had been introduced for the sole purpose of showing the defendant's bad character).

Although Rule 404(b) prohibits the admissibility of gang affiliation evidence to show that a person acted in conformity therewith, such evidence is admissible for other purposes, such as proof of motive, intent, or identity. TEX. R. EVID. 404(b); *see also Williams v. State*, 974 S.W.2d 324, 331 (Tex. App.—San Antonio 1998, pet. ref'd.) (finding that evidence of defendant's gang affiliation was admissible to prove motive). In the case at hand, the State's theory of the offense was that

Salinas went to Aguilar's home that evening under the authority of the Mexican Mafia to stab Aguilar for being an alleged ex-member of the Mexican Mafia. Such evidence was relevant to show Salinas's motive and intent in the knifing incident. The evidence was also relevant to show that Salinas used his gang affiliation as an intimidation tactic—most notably over Sutton—further disproving the defense's theory that Salinas went to Aguilar's home that evening to retrieve Sutton.

We recognize that otherwise relevant evidence under Rule 404(b) may be excluded under Texas Rule of Evidence 403 if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. Unfairly prejudicial evidence has a tendency to cause a jury to make a decision based on emotion. *Montgomery*, 810 S.W.2d at 389. The Court of Criminal Appeals explained in *Montgomery* that there are four factors a court should consider when determining whether evidence is unfairly prejudicial: 1) the weight of the probative evidence; 2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; 3) the proponent's need for the evidence; and 4) the length of time the proponent needs to develop the evidence. *Id.* at 389–90. In applying these four factors, we hold the evidence was not unfairly prejudicial.

First, evidence of Salinas's affiliation with the Mexican Mafia had substantial probative value because it was relevant to prove Salinas's motive for stabbing Aguilar, as well as his ability to manipulate and control Sutton. Second, although gang evidence may be prejudicial, *see Galvez v. State*, 962 S.W.2d 203, 206 (Tex. App.—Austin 1998, pet. ref'd) (holding that gang evidence is highly prejudicial at the guilt/innocence stage), it did not outweigh the probative value in this case. Here, the probative value of the evidence was essential to proving Salinas's motive in the knifing incident. Without evidence that Salinas was a member of the Mexican Mafia, the State could not have argued its theory that the confrontation between Salinas and Aguilar was gang-related, rather

than girlfriend-related. Nevertheless, we acknowledge that gang evidence at the guilt/innocence stage can be prejudicial. *Id.* Therefore, in situations such as this, where the probative value and prejudicial effect of evidence are of relatively equal weight, the trial court should rule in favor of admission, in keeping with the presumption that all relevant evidence should be admitted. *Montgomery,* 810 S.W.2d at 389. Thus, the trial court did not err in admitting the evidence because although it was prejudicial, it was equally probative. It was admitted to show motive and intent and not merely to inflame the jury. Third, the State had a great need for the evidence because it worked to disprove the defense's theory that Salinas went to Aguilar's home to retrieve Sutton. Finally, the time required to develop the testimony was brief and did not weigh against its admission.

Even if we were to assume that admission of Salinas's gang affiliation was error, it constituted harmless error under the circumstances of this case. When conducting a harmless error analysis, Texas Rule of Appellate Procedure 44.2(b) requires appellate courts to disregard a nonconstitutional error "that does not affect substantial rights. . ." TEX. R. APP. P. 44.2(b). In *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002), the Texas Court of Criminal Appeals examined when a defendant's substantial rights might be affected. The court determined that erroneously admitted evidence does not affect substantial rights when the appellate court examines the record as a whole and can fairly assess that the error did not adversely influence the jury or had only a slight affect. *See id.* (citing *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)). Factors the court may consider include any testimony and physical evidence, the nature of the evidence supporting the verdict, any defensive theories, opening and closing arguments, voir dire, and the emphasis the State placed on the error. *Id.* Furthermore, the court may also consider the overwhelming evidence of guilt. *See id.* at 357 (citing *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000)).

In examining the record as a whole, there is overwhelming evidence to support Salinas's guilt, regardless of the admission of his affiliation with the Mexican Mafia. Evidence was admitted that Salinas not only instigated the confrontation by driving to Aguilar's home that evening, but also that he stood at Aguilar's front gate, prompted a verbal fight, and later stabbed Aguilar. One neighbor, Aubrey Lemm, Sr., testified that he saw Salinas standing outside Aguilar's gate holding a knife, arguing with Aguilar, and eventually shouting, "Come on, come on, let's fight." Another witness, Skylar Shirley, testified that he saw Salinas reach through the fence and stab Aguilar. Another neighbor, Albert Sprowls, testified that he heard Aguilar telling Salinas to "Drop the knife." Sprowls also testified about the cuts he observed on Aguilar's body. After reviewing the record as a whole, we conclude there is overwhelming evidence supporting Salinas's guilt in the stabbing of Aguilar, despite the admission of Salinas's gang affiliation.

We do not discount that evidence of Salinas's gang affiliation may have had some influence on the jury. In examining the record as a whole, we find that the State used the evidence during cross-examination of witnesses. However, the evidence was used to prove both Salinas's motive in the knifing incident and that Sutton feared Salinas. Finally, the State also used the evidence during its closing argument. Although the State's argument played to the emotional aspect of gang wars in the community, it was not so "emotionally charged as to prevent the jury from rationally considering the evidence before it." *See Motilla*, 78 S.W.3d at 358 (finding that although certain testimony was somewhat emotional, it was neither misleading nor confusing and thus was considered harmless error). Instead, the State's argument attempted to explain that individuals cannot merely end their Mexican Mafia membership at will. In essence the State's argument went to Salinas's motive that evening because he was under the authority of the Mexican Mafia to "remove" someone who no longer wanted to be a member of the gang. Such evidence, if it was

admitted in error, did not adversely affect the jury when considering the overwhelming evidence of Salinas's guilt.

## CONCLUSION

Because evidence of Salinas's affiliation with the Mexican Mafia was relevant and the probative value was not substantially outweighed by any prejudicial effects, we conclude that the evidence was not erroneously admitted. Even if the evidence was admitted in error, the error was harmless. The trial court did not abuse its discretion and no substantial right of the defendant was affected. Accordingly, we overrule Salinas's objection and affirm the trial court's judgment.

Catherine Stone, Justice

DO NOT PUBLISH